**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

WE THE PEOPLE, JOHN BOYKIN individually and as a
member of WE THE PEOPLE, GEORGE BROOKS
individually and as a member of WE THE PEOPLE, ELIE
CIVIL individually and as a member of WE THE PEOPLE,
DWAYNE S. CLAY individually and as a member of WE
THE PEOPLE, KEHINDE CUNNINGHAM individually
and as a member of WE THE PEOPLE, FRANTZ DUMEL
individually and as a member of WE THE PEOPLE, MEL
HANCOCK individually and as a member of WE THE
PEOPLE, KARINA JOSEPH individually and as a member
of WE THE PEOPLE, MARVIN MARC individually and as
a member of WE THE PEOPLE, JOHN MILES individually
and as a member of WE THE PEOPLE, MELISSA
PENSABENE individually and as a member of WE THE
PEOPLE, SABRINA CHARLES-PIERRE individually and
as a member of WE THE PEOPLE, JEN SCOTT individually
and as a member of WE THE PEOPLE, JAMES TISDALE
individually and as a member of WE THE PEOPLE

Civil Action No.

**COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES**

**JURY TRIAL DEMANDED**

Plaintiffs,

vs.

THE TOWN OF CLARKSTOWN, MICHAEL SULLIVAN
individually and in his official capacity as CHIEF OF POLICE
of THE TOWN OF CLARKSTOWN, STEPHEN COLE-
HATCHARD individually and in his official capacity
as a TOWN OF CLARKSTOWN POLICE SERGEANT
and DIRECTOR OF THE SPECIAL INTELLIGENCE UNIT,
JOHN AND JANE DOE individually and in their official capacity
as MEMBERS OF THE SPECIAL INTELLIGENCE UNIT for
THE TOWN OF CLARKSTOWN POLICE,

Defendants.

---

1

By and through their attorney William O. Wagstaff III, Plaintiffs allege upon knowledge, information and/or belief as follows:

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which the Plaintiffs WE THE PEOPLE are seeking relief for the violation by Defendants of their rights, privileges, and immunities secured by the First, Fourth, & Fourteenth Amendments to the United States Constitution and 28 CFR Part 23. This suit is being initiated under 42 U.S.C § 1983, which is the federal mechanism that allows constitutional tortfeasors acting under color of law to be sued in Federal Court.

2.      The actions of the Defendants individually and as co-conspirators are a reminder that illegal surveillance and illegal searches by law enforcement agencies, both which started as early as the 1900's with the NYPD's "Italian Squads" still exist today. The right to free speech, to be free from illegal searches, and right to equal protection under the law regardless of your race, religion, ethnicity, or political views are fundamental to our American way of life. WE THE PEOPLE is a grassroots African American organization that sponsors and participants in events geared towards uplifting, contributing to, and educating the Rockland County community. Consistent with their mantra, WE THE PEOPLE promoted and sold tickets to a play "A Clean Shoot?" in the summer of 2015. The organization felt that the story line of the play, which involved a white police officer shooting an off-duty black police officer, would spark meaningful dialogue about race. The artwork on the flyer for the play depicted a white police officers' hand pointing a gun outside of the squad car. As a result of the promotion of this play the members of WE THE PEOPLE were targeted by the Town of Clarkstown Police Special Intelligence Unit (SIU) without reasonable suspicion that they individually, or as a group were planning or actually engaged in any criminal activity.

Each of the Plaintiffs were illegally surveilled and subjected to an illegal search when their names were "run through" the Clarkstown Police Department RMS criminal database. See SIU Intelligence Report, annexed hereto as **Exhibit A.** WE THE PEOPLE were targeted solely because they were an African American group and seemed to express social/political views that differ from the Defendants. The Courts have put local governments and their constituent agencies on notice that racial profiling, illegal surveillance and all willful and wanton unconstitutional conduct will be punished.

3.      WE THE PEOPLE bring this lawsuit in order to affirm the principle that individuals may not be singled out for intrusive investigation and pervasive surveillance that disrupt the Constitutional Right to be free from harassment even if you're African American. Accordingly, WE THE PEOPLE seek an injunction prohibiting Defendants and any government employees under their control now or in the future from engaging in illegal surveillance, also requiring the SIU to be disbanded unless it adopts the Handschu Guidelines, compensatory and punitive damages.

## JURISDICTION AND VENUE

4.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs allege violations of the United States Constitution, 28 U.S.C. § 1332 based on diversity of citizenship and 28 U.S.C. § 1343 because relief is sought for the deprivation of Plaintiffs' constitutional rights under color of State Law.

5.      Venue in the Southern District of New York is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred within the district.

3

**PARTIES**

Plaintiffs

6.      **WE THE PEOPLE – Rockland County** is an African American grassroots organization made up of individuals who believe in doing whatever work necessary to uplift and strengthen Youth and Community. WE THE PEOPLE organize community service events in the Rockland County community, such as clean up days for children to teach appreciation for the environment, and pride for the place they live.

7.      **John Boykin** works as a teaching assistant. His focus is to aid children with behavior management issues reach their academic potential. Mr. Boykin is engaged with three (3) children and lives in Spring Valley, New York.

8.      **George Brooks** works as a quality documentation analyst. Mr. Brooks has a son who attends Spring Valley Senior High School, where they live in New York.

9.      **Elie Civil** is a father of two (2); he has a son who is a freshman in college and a four (4) month old daughter. Mr. Civil works as a mental health therapist and lives with his fiancé in Spring Valley, New York.

10.     **Dwayne S. Clay** works as a train engineer. Mr. Clay lives with his wife who is a pediatric doctor in Mount Vernon, New York.

11.     **Kehinde Cunningham** currently works as a draft tech for Clark County Management. He has moved since the incidents complained of began and now lives with his fiancé in Santa Clarita, California.

12.     **Frantz Dumel** is a real estate agent in Clifton, New Jersey. Mr. Dumel lives in Pomona, New York.

13.     **Mel Hancock** has been married for 40 years, is the father of three (3) daughters and grandfather of three (3) grandchildren. He is a printer by trade, but is also

a stand up comedian and actor. Mr. Hancock was the director and lead actor in the play " A Clean Shoot?" which is the production that initiated the illegal surveillance complained of herein. Mr. Hancock lives in Suffern, New York.

14.    **Karina Joseph** is a financial aid administrator for a college. She certifies New York State grant applications, and recruits at various high schools in the region. She resides in Garnerville, New York.

15.    **Marvin Marc** works as a commercial coordinator. Mr. Marc and his wife of seven (7) years live with their three (3) daughters and son in Orlando, Florida.

16.    **John Miles** is a nurse at a health center. Mr. Miles is engaged and has a sixteen (16) year old son, and a two (2) month old baby girl. He resides with his fiancé and children in Spring Valley, New York.

17.    **Melissa Pensabene** is a program director at a community center. She lives in Airmont, New York.

18.    **Sabrina Charles-Pierre** is a member of the School Board for the East Ramapo Central School District. Ms. Pierre is a paralegal and currently enrolled in school to earn her Bachelors Degree. She lives with her two (2) children in Spring Valley, New York.

19.    **Jen Scott** is married with two (2) children, whom he lives with in Nanuet, New York. Mr. Scott is the personal manager for musical artist Bishop Nehru, who is his client as well as his son, Markel Scott.

20.    **James Tisdale** is a nurse's aide; Mr. Tisdale resides with his wife and son in Garnerville, New York.

<u>Defendants</u>

21.     **The Town of Clarkstown (Town)** is a municipal corporation duly incorporated and existing pursuant to the laws of the State of New York. The Town has established and maintains a police department. The Town is responsible for the illegal actions of its police department, police officials, the rank and file as well as units like the Special Intelligence Unit that it creates unilaterally or through inter-municipal agreement.

22.     **Michael Sullivan**, at all times relevant to the facts of the Complaint, was the Chief of Police for the Town acting under color of law. As such, he was the policy maker for the police department and liability for his illegal conduct flows to the Town. The conduct Mr. Sullivan engaged in was malicious and intentional; accordingly he is also being sued individually.

23.     **Stephen Cole-Hatchard**, at all times relevant to the facts of the Complaint, was a police sergeant and Director of the Special Intelligence Unit acting under color of law. As SIU Director, Sgt. Cole Hatchard reported directly to, timely apprised and obtained approval from Chief Sullivan for all electronic surveillance and related investigative activities of the SIU. The Town is legally responsible for his actions because a policy maker approved them. The conduct Sgt. Cole-Hatchard engaged in was malicious and intentional; accordingly he is also being sued individually.

24.     **John and Jane Does** are and/or were, at all times relevant herein members of the Special Intelligence Unit, whose names are not presently known to Plaintiffs. At all times relevant to the facts of the Complaint, said Defendants were acting under color of law under the direction of Chief Sullivan. Any party contributing

6

to the illegal surveillance and racial profiling of African Americans is engaged in malicious and intentional conduct; accordingly he/she are also being sued individually.

## STATEMENT OF FACTS

### Creation of Special Intelligence Unit Under Applicable Federal Law

25.     Pursuant to the Omnibus Crime Act, the Town created within the Police Department the Special Intelligence Unit ("SIU"). On or about April 17, 2013, the County of Rockland and the Town entered into an inter-municipal agreement to form an entity known as the Rockland County Intelligence Led Policing and Prosecution Center ("ILPPC or "SIU") to monitor, collect and share data regarding criminal activity as authorized by the Omnibus Crime Act, 28 CFR Part 23 *et. seq.* and the Constitutions of the United States and State of New York.

26.     28 CFR Part 23.20 prohibits the surveillance and collection of electronic data concerning the political, religious or social views of any individual, group or association unless there is a reasonable suspicion that such individual, group or association is involved in criminal conduct and the information is relevant to that criminal conduct, stating in pertinent part:

> **(a)**     A project shall collect and maintain criminal intelligence information concerning an individual *only if there is reasonable suspicion* that the individual is involved in criminal conduct or activity and information is relevant to that criminal conduct or activity.

> **(b)**     A project *shall not collect* or maintain criminal intelligence information about the political, religious or social views, associates, or activities of any individual or any group, association, corporation, business, partnership, or other organization unless such information *directly relates to criminal conduct or activity and there is reasonable suspicion that the subject of information is or may be involved in criminal or activity.*

**(Emphasis Added)**

7

27.     As Clarkstown's Chief of Police, the governance and control of this police department and its members is vested in Defendant Chief of Police Michael Sullivan. As such, Michael Sullivan was the policy maker for the Town police department. See Defendant Sullivan's Complaint pg. 6  ¶ 28, annexed hereto as **Exhibit B**. Admitted by Defendant Town See Town's Answer pg. 4 ¶ 28, annexed hereto as **Exhibit C**.

28.     At all relevant times before his suspension on July 20, 2016, as Chief of Police Defendant Sullivan was responsible to insure the SIU's compliance with all applicable laws, including the aforesaid provisions of the Omnibus Crime Act and related regulations.

29.     At all relevant times before his suspension as Chief of Police, Sullivan appointed Defendant Cole-Hatchard as Director of the SIU.

30.     As SIU Director, Sgt. Cole-Hatchard reported directly to, timely apprised and obtained approval of Chief Sullivan for all the electronic surveillance and related investigative activities of the SIU.

31.     This case is rather unique in that the Defendant Town of Clarkstown has already admitted that the illegal actions alleged herein have happened. Their admissions are contained in their Amended Answer to Co-Defendant Chief of Police Michael Sullivan's lawsuit (Case No.: 7:16- cv-06714) initiated against the Town of Clarkstown seeking damages and reinstatement to his position as Chief of Police. See **Exhibit C**

32.     Chief Sullivan's suspension is as a result of him being the policy maker for the Town of Clarkstown Police and condoning a custom and practice of illegal surveillance.

33.     From at least July 2015, with knowledge and consent of Defendant Chief Sullivan, Defendant Sgt. Cole-Hatchard, and Defendant John and Jane Doe Members of

8

the SIU have engaged in the unlawful surveillance of African Americans groups, the

Rockland County Sheriff, a Clarkstown Town Judge and citizens of the County of

Rockland, solely based upon these individuals' race, social and/or political positions in

violation of 28 CFR Part 23 and the First, Fourth, and Fourteenth Amendments to the

United States Constitution.

### Racial Profiling and Illegal Surveillance of African American Group

### "WE THE PEOPLE"

34.   Beginning on or about July 24, 2015, Sgt. Cole-Hatchard advised

Haverstraw, New York Police Chief Miller via email that the SIU had learned that "WE

THE PEOPLE," an African American community group located in Rockland County

with no criminal records or history of violence, planned to sponsor a play entitled "A

CLEAN SHOOT?" stating in pertinent part:

> I came across an on line ad for an event scheduled to take place in
> your jurisdiction and thought you might want to be aware. A group
> called "WE THE PEOPLE" is presenting a play entitled "A CLEAN
> SHOOT?" on Thursday, September 3, 2015, at 2000 hours at the
> SHADES REPERTORY THEATER at 64 Main Street, Haverstraw.
> The advertisement shows a photo of a police car with a white subject
> Pointing a handgun out of the vehicle window. I have attached a copy
> of the ad for your reference. We do not have any intelligence developed
> relating this matter at this point, as this is for informational purposes
> only. *However, if you would like a tactical intelligence workup on the
> hosting group or any of the people mentioned in the ad feel free to let
> me know and we will be happy to do so right away.* **(Emphasis Added)**

35.   On August 4, 2015, the Haverstraw Police Department acknowledged via

email receipt of the play flyer and requested that the Clarkstown SIU "provide anything

you can obtain on this group and its participants."

36.   By email of the same day Sgt. Cole-Hatchard advised "... I will have one

of he (sic) analysts do a workup on the group, location and players. Give us a couple of

days and i (sic) will get whatever we find to you."

37.     The SIU thereafter generated an August 7, 2015 "Intelligence Report" on "WE THE PEOPLE" and the 14 individuals (Plaintiffs) involved with the planned production of the play. See **Exhibit A**

38.     The "Intelligence Report" stated that the SIU, as part of the ILPPC, was "a 28 CFR Part 23 compliant agency." That representation was false in that the Intelligence Report and SIU violated 28CFR Part 23, *et. seq.*

39.     Although there was absolutely no evidence that any of the members of "WE THE PEOPLE" were engaged in, or reasonably suspected to engage in, criminal activity, violence, or otherwise posed a public safety threat, the Report reflects that SIU used electronic surveillance assets to search each individual's social media profiles and postings. In addition, each individual was "run through" the Clarkstown RMS criminal database.

40.     The "Intelligence Report" Summary states, "Although individuals involved in the organization have strong opinions, there is no cause to believe this event is going to become violent." See **Exhibit A (pg. 20)**

41.     On or about August 31, 2016 WE THE PEOPLE were contacted by NBC on Face Book instant messenger and notified about the existence of this "Intelligence Report" and the illegal surveillance that preceded the report.

42.     On or about September 22, 2016 a news story covered by Investigative Reporter Sarah Wallace was aired/published by NBC. Defendant Chief Sullivan was asked the following question and answered as follows:

Ms. Wallace:   *"So no one was run through the criminal data base?"*

Chief Sullivan:   *" No, no to do criminal histories things of that nature you need a reason to do it, you have to document it, this was all public information."*

43.     The "Intelligence Report" proves Chief Sullivan's answer to Ms.

Wallace's question was a blatant lie. (**Emphasis Added**)

44.     The SIU racial profiled and illegal surveilled "WE THE PEOPLE"

without any justifiable basis because "WE THE PEOPLE" exercised its First

Amendment right to express their views through sponsoring a play.

48.     The racial profiling of the members of "WE THE PEOPLE" violated 28

CFR Part 23 (a) and (b) as well as the First, Fourth and Fourteenth Amendments to the

United States Constitution.

## SIU Has a Custom and Practice of Conducting Illegal Surveillance of Groups and

## Individuals based on Race, Social, and/or Political Views

I.     **Racial Profiling and Illegal Surveillance of Members of Black Lives Matter**

49.     Commencing at least as early as January 1, 2015, the SIU issued monthly

reports in conjunction with and to the Rockland County District Attorney's Office.

50.     The SIU describes the purpose of the Report as follows:

> Through the use of social media monitoring platform and other
> Investigatory tactics, the ILPPC is able to search, monitor and
> analyze real time social media content from any chosen location
> around the country. With the aim to interrupt violence, the ILPPC's
> mission is to:

> Prevent individuals from causing harm to themselves and others;
> Set up geofences to monitor social media in high-risk areas of
> Rockland; and

> Monitor social media accounts of individuals who may be associated
> with acts of violence. Findings will all be supported by both tactical
> and strategic intelligence, with assistance from constant communication
> with the Youth Bureau and Community Advocates (Interrupters).

51.     Among other things, the Reports reflect the number of electronic

investigations established, the groups targeted for electronic surveillance via electronic

"Geofences" and the number of alerts received and reviewed.

11

52.     The November 2015 Report, dated December 11, 2015, indicates that the
"Black Lives Matter Movement" was one of the groups subject of electronic
surveillance, along with such categories as "Gangs," "Violence," "Terrorism,"
"Heroine Initiative," and "Police Riots."

53.     The November 2015 Report reflects SIU conducted electronic
surveillance on two (2) Black Lives Matter Movement members. No misconduct or
threat of criminal conduct was found with respect to these two unidentified individuals,
nor does the Report reflect any justifiable basis to conduct such surveillance as
mandated by 28 CFR Part 23.20 (a) and (b).

54.     Upon information and belief, at the direction of Chief Sullivan and Sgt.
Cole-Hatchard, the SIU was conducting unlawful surveillance of Black Lives Matter
Members well before November 2015.

55.     The December 2015 Report, dated January 4, 2016, repeats the
surveillance methodology referenced in the November Report. The December Report
reflects that the SIU conducted electronic surveillance on what it deemed to be six (6)
members of the Black Lives Matter Movement. Again, no misconduct was found, nor
was there any legitimate legal basis in the Report for surveillance under 28 CFR Part
23.20 (a) and (b).

56.     By email dated January 14, 2016, Sgt. Cole-Hatchard forwarded the
December Report to various individuals within both the Clarkstown Police Department
including Sullivan, as well as the Rockland County District Attorney's Office.

57.     Within 45 minutes of receipt of the December Report, the Rockland
County District Attorney's Office responded to Sgt. Cole-Hatchard's transmittal of the
December Report, noting in pertinent part the obvious illegality of the surveillance of

Black Lives Matter members: "I mentioned before, you really should not have Black Lives Matter listed as a target for surveillance." **(Emphasis Added)**

**II.     Illegal Surveillance of Town Residents That Support Police Reform**

58.     Current Town of Clarkstown Supervisor George Hoehmann ran in the November 2015 election on a platform that included the review and appropriate fiscal reform of all aspects of Town government, including the Police Department's $50 million annual budget, which represents one-third of the Town's $150 million annual budget.

59.     Upon information and belief, following Supervisor Hoehmann's election victory the SIU at the direction of Sullivan and Cole-Hatchard, the SIU began and continue conducting illegal surveillance of Supervisor Hoehmann's social media to gather personal information to use to oppose Mr. Hoehmann's proposed review and reform of the police department.

60.     Commencing on or about December 1, 2015, with the knowledge and consent of Chief Sullivan and Sgt. Cole-Hatchard, the SIU began using electronic surveillance to identify individuals with social media posts who supported Supervisor Hoehmann's fiscal reforms, including that of the police department.

61.     By email dated December 11, 2015, SIU analyst, K. Donohue gathered and forwarded to Sgt. Cole-Hatchard the social media posts of approximately 20 Clarkstown residents who favor fiscal reform of the police department. Once again, none of the individuals were suspected of any criminal activity. Their only crime was the political views posted on social media were adverse to the financial interests of Chief Sullivan, Sgt. Cole-Hatchard, and the Clarkstown Police Department.

13

### III.   Rockland County Sheriff Lou Falco

62.     In November 2015, Rockland County Sheriff Lou Falco ran for re-election. Chief Sullivan and Sgt.Cole-Hatchard opposed his re-election, perceiving him as a political rival and threat for available public police funding.

63.     By email dated September 9, 2015, Sgt. Cole-Hatchard forwarded to Chief Sullivan a four page political attack "REFRESHER" strategy against County Sheriff Falco entitled "LOU FALCO IS THE WORST THING TO HAPPEN TO PUBLIC SAFETY AND LAW ENFORCEMENT IN ROCKLAND COUNTY IN DECADES." The document was an outline of a political campaign against Falco based upon the perceived threat the County Sheriff posed to the Clarkstown Police Department. It was prepared by Sgt. Cole-Hatchard while on duty at the SIU and transmitted via the official Clarkstown.org email to Chief Sullivan while he was on duty as Police Chief.

64.     Like the surveillance report on WE THE PEOPLE, the email cover "Notice" accompanying the Falco "Refresher" stated that SIU was a "28 CFR Part 23 compliant agency". Sheriff Falco did not engage in any criminal conduct, nor did Chief Sullivan or Sgt. Cole-Hatchard have a reasonable suspicion he did so. The political attack against Sheriff Falco, is a flagrant violation of 28 CFR Part 23.20 (a) and (b).

### IV.   Clarkstown Town Judge Howard Gerber

65.     Chief Sullivan and Sgt. Cole –Hatchard perceived Clarkstown Town Judge Howard Gerber as a political enemy of the police department. Unhappy with Judge Gerber, Chief Sullivan unsuccessfully filed a complaint in early 2015 with the New York State Commission on Judicial Conduct. Gerber was exonerated.

66.     Judge Gerber ran for re-election in November 2015. In anticipation of his re-election bid Chief Sullivan and Sgt. Cole Hatchard, both while on duty prepared a

14

potential election strategy to defeat Judge Gerber. By email dated October 29, 2015,

Sullivan outlined his plan to Sgt. Cole-Hatchard:

> I have been monitoring the news and so far there has been no stories
> regarding this. I don't think we should bring attention to it unless the
> Judge does. If he does I think we should release the case file, including
> the interview to the press. Although we don't normally do this I think
> we can in the interest of public disclosure regarding an elected official
> that directly impacts upon his conduct and duty of that elected official.
> I also spoke with the District Attorney who stated that he would have no
> problem with releasing it. I am also including a draft of a letter I will be
> sending to the Commission on Judicial Misconduct. Please review and let
> me know what you think.

  67. The same day Sgt. Cole-Hatchard, while on duty with the SIU,

responded: "If [the District Attorney] is going to release it [Gerber's disciplinary case

file], I would think it will wait until a point just before Election Day leaving [Gerber] no

time for a response."

  68. Judge Gerber was exonerated of any wrongdoing by the State of New

York. He did not engage in criminal conduct. He did not represent a public safety threat.

Yet, while on duty Chief Sullivan and Sgt. Cole-Hatchard engaged in a scheme to

politically attack and potentially defeat Judge Gerber for political purposes illegally

using police department and SIU resources in violation of 28 CFR Part 23.20 (a) and (b)

and the United States Constitution.

  69. As a result of the foregoing, SIU, have an will continue unless enjoined

to engage in unlawful racial, political, social profiling and surveillance of citizens in

violation of the Omnibus Crimes Act, 28 CFR 23, *et seq.* and the First, Fourth and

Fourteenth Amendments to the United States Constitution.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**VIOLATIONS OF THE FIRST AMENDMENT TO THE U.S. CONSTITUTION**

70.     Platintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth at length herein.

71.     At the time of the conduct complained of herein, Chief of Police Michael Sullivan, Sergeant Stephen Cole-Hatchard, and John & Jane Doe Members of SIU were all employees of the Defendant Town of Clarkstown and acted under color of law.

72.     The Defendants as co-conspirators through their illegal surveillance and racial profiling sought to have a chilling effect on Plaintiffs' right to free speech and association. As a direct and proximate result of the acts of the Defendants individually and as co-conspirators, the Plaintiffs have been deprived of their rights under the First Amendment to the United States Constitution.

### SECOND CAUSE OF ACTION

**VIOLATIONS OF THE FOURTH AMENDMENT TO THE U.S. CONSTITUTION**

73.     Plaintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth at length herein.

74.     At the time of the conduct complained of herein, Chief of Police Michael Sullivan, Sergeant Stephen Cole-Hatchard, and John & Jane Doe Members of SIU were all employees of the Defendant Town of Clarkstown and acted under color of law.

75.     The Defendants as co-conspirators through their illegal surveillance, and illegal search of Plaintiffs, violated the Plaintiffs rights. As a direct and proximate result of the acts of the Defendants individually and as co-conspirators, the Plaintiffs were deprived of their right to be secure in their person and home against unreasonable

searches and seizures in violation of the Fourth Amendment to the United States

Constitution.

## THIRD CAUSE OF ACTION

### VIOLATIONS OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION

76.     Plaintiffs repeat and reallege the foregoing paragraphs as if the same

were fully set forth at length herein.

77.     At the time of the conduct complained of herein, Chief of Police Michael

Sullivan, Sergeant Stephen Cole-Hatchard, and John & Jane Doe Members of SIU were

all employees of the Defendant Town of Clarkstown and acted under color of law.

78.     The Defendants as co-conspirators through their illegal surveillance, and

illegal search of Plaintiffs, Plaintiffs were treated differently as a direct result of being

African American. As a direct and proximate result of the acts of the Defendants

individually and as co-conspirators, the Plaintiffs were deprived of their rights under the

Equal Protection Clause of the Fourteenth Amendment to the Unites States

Constitution.

## FOURTH CAUSE OF ACTION

### MONELL CLAIMS

79.     Plaintiffs repeat and reallege the foregoing paragraphs as if the same

were fully set forth at length herein.

80.     At the time of the conduct complained of herein, Chief of Police Michael

Sullivan, Sergeant Stephen Cole-Hatchard, and John & Jane Doe Members of SIU were

all employees of the Defendant Town of Clarkstown and acted under color of law.

81.     *Monell v. New York City Department of Social Services* established the

principle that the government is liable for actions taken pursuant to official municipal

policy that cause plaintiffs to be injured.

17

82.     An official policy can be created by regulation, ordinance, or handbook. More commonly under § 1983 suits "Municipal Policy" stems from customs and practices of the municipality that are evinced through repeated incidents of similar conduct. "Municipal Policy" can also stem from a decision made by a policy-making authority or the approval of a subordinate's decision, by a policy-making authority because their decision is final.

83.     It is undisputed based on the admissions contained in Defendant Town's Answer to Co-Defendant Chief Sullivan's lawsuit that he was the policy maker for the police department.

84.     It is undisputed based on the admissions contained in Defendant Town's Answer to Co-Defendant Chief Sullivan's lawsuit that there were repeated incidents of illegal surveillance of groups and individuals based on race, social, and/or political views.

85.     Accordingly, under the dictates of Monell and its progeny the Town of Clarkstown is liable for the deprivation of the rights afforded to Plaintiffs WE THE PEOPLE as a group and individually under 42 U.S.C § 1983, 28 CFR Part 23, First, Fourth, and Fourteenth Amendments to the United States Constitution.

## PUNITIVE DAMAGES

86.     Plaintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth at length herein.

87.     The acts of the individual Defendants were willful, wanton, malicious and oppressive and were motivated solely by a desire to harm Plaintiff's without regard for their rights secured as American citizens and were based on a lack of concern and ill-will towards the Plaintiffs because they were African American and voiced an

18

opinion contrary to their own. Such acts therefore warrant an award of punitive damages.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment and relief against Defendants as follows:

a.   Enjoin further violations of Plaintiffs' constitutional rights, including but not limited to an injunction that requires the Defendant to refrain from targeting Plaintiffs for surveillance on the basis of race;

b.   Order Defendant Town of Clarkstown to adopt and follow the Handschu Guidelines;

c.   Award Compensatory Damages in an amount to be determined at trial;

d.   Award Punitive Damages in an amount to be determined at trial;

e.   Award costs and expenses of this action including attorneys' fees to Plaintiffs pursuant to 43 U.S.C. § 1988;

f.   Any such other and further relief as this Court may deem appropriate.

### **A JURY TRIAL IS DEMANDED**

DATED:      White Plains, New York
            January  1 2   , 2017

              **LAW OFFICE OF WILLIAM O. WAGSTAFF III P.C.**

              By:
              William O. Wagstaff III, Esq.
              William@Wagstaff.Legal
              75 South Broadway Suite 400
              White Plains, New York 10601
              Tel: 914-226-3300
              Fax: 914-226-3301

              *Counsel for Plaintiffs*